Filed 12/12/25  In re A.C. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.C.,<br><br>Defendant and Appellant. | F089934<br><br>(Super. Ct. Nos. 18CEJ300173-3, 18CEJ300173-4, 18CEJ300173-5)<br><br>**OPINION** |

<u>**THE COURT**</u>*

APPEAL from an order of the Superior Court of Fresno County.  Brian M. Arax, Judge.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Douglas T. Sloan, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Meehan, Acting P. J., Snauffer, J. and DeSantos, J.

Appellant C.C. (mother) is the mother of three children, now 18-year-old A.C., 13-year-old J.C., and 10-year-old A.M.C. (the children), who are the subjects of a dependency case. Mother argues the juvenile court abused its discretion pursuant to Welfare and Institutions Code[1] section 362.4, subdivision (a) when it ordered the children be placed in the custody of J.C. (father) and dependency be dismissed because the exit order impermissibly delegated the court's authority by failing to establish a minimum number of visits for mother and the children. The Fresno County Department of Social Services (department) disagrees. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The department's March 6, 2025 report stated that on February 6, 2025, the children, then 17, 12 and nine years old, who lived with mother, reported mother drank alcohol "excessively" and would often drive while intoxicated with the children in her car. The children reported mother failed to take them to school on time because she was passed out from drinking alcohol, frequently left A.C. to care for his younger siblings, made A.C., who did not have a driver's license, drive his siblings around, frequently came home intoxicated and "act[ing] wild," and that A.C. had found methamphetamines belonging to mother.[2] The reporting party stated mother's home was dirty and the children sometimes had no food. Father had "gone to court, as [mother] is not supposed to be drinking around the [children]" but "the court did not want to look at what [father] had to show them." Truancy officers had attempted to engage with mother because of

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Mother has a history of substance abuse, including methamphetamines. The reporting party stated that methamphetamines were how mother's substance abuse began in the past. Mother's substance abuse was the basis for a previous dependency proceeding for the family in 2018. During the 2018 dependency proceedings, father reunified with the children, but mother did not, and father was granted sole legal and physical custody of the children. However, in subsequent family court proceedings, mother gained sole legal custody of the children, because of father's financial and housing instability, accordingly to mother.

2.

her failure to take the children to school regularly, causing the children to be failing school, but she avoided contact with them. A.C. stated he wanted to live with father. The children stated they wanted mother to stop drinking alcohol and were worried about her. On February 5, 2025, A.C. called father and told him he wanted to run away from mother's home and was picked up by father. Father called the police because mother told him she would report A.C. missing, but the police told father A.C. did not have to return to mother's home because he was 17 years old. The next day, J.C. sent A.C. pictures of mother's home with beer cans and beer bottles "all over the place." Mother stated A.C. was lying about her conduct because he was angry she had disciplined him by taking away his video game console. The report stated the Indian Child Welfare Act (ICWA) did not apply to the children based on the ICWA finding by the juvenile court during the family's previous dependency proceedings in 2018. The report recommended the children be detained from mother and that there be "[r]easonable, supervised visits with supervision by the [d]epartment" between mother and the children, and an extended visit between father and the children.

Dependency proceedings were initiated on behalf of the children on March 6, 2025, pursuant to section 300, subdivision (b)(1), due to mother's substance abuse. The petition alleged mother's excessive alcohol use placed the children at substantial risk of suffering serious physical harm or illness.

At the March 10, 2025 detention hearing, the juvenile court found a prima facie case that the children came within section 300, subdivisions (b)(1), ordered the children's continued detention, and granted father an extended visit with the children pending the next hearing.

The May 19, 2025 jurisdiction and disposition report recommended the juvenile court sustain the allegations of the petition, declare the children dependents, place the children with father, terminate jurisdiction, grant father sole legal and physical custody, and grant supervised visitation for mother, with custody and visitation "as agreed upon"

3.

in exit mediation. The report stated mother reported being sober since early March 2025. She stated she was participating in an intensive substance abuse program. Mother reported being employed and having stable housing. Mother asked for additional visitation with the children and consistently asked for more communication with the children. She stated she was concerned father and father's wife were " 'potential[ly] alienat[ing]' " the children from her and that they lied to make her "look bad." Father stated he was frustrated with his coparenting relationship with mother. The report stated the social worker discussed "missed visits and reminded [father] that [mother]'s time is limited, and [he] ha[s] to allow [mother's] visits [with the children]." Father acknowledged A.M.C. wanted more visits with mother and stated he did not want to deny A.M.C. visits. A.M.C. stated his visits with mother were "good" and he missed her, and requested more time with her, "even overnight visits." He stated he would like to live with both parents, but that the living situation at father's house was "healthier." A.C. and J.C. stated they did not want visits with mother. On March 6, 2025, mother submitted to substance abuse testing, with negative results, but the panel did not include testing for alcohol. Testing for alcohol was added to mother's testing panel on March 17, 2025. Father also tested on March 6, 2025, and tested positive for marijuana. The report further stated mother was scheduled to start her parenting class on March 6, 2025.

Mother and father participated in exit mediation. The April 14, 2025 visitation order from the exit mediation gave father sole legal and physical custody and gave mother supervised visitation that "shall not exceed [two] visits per week, for no more than [five] hours per visit," at "[s]pecific times of the days" mutually agreed upon by the parents and the supervising party. The order stated that if the parties could not reach an agreement regarding the "times and days for supervised visits to occur," the parties would engage a supervising agency to facilitate the visits and mother would bear the cost of the supervising agency.

4.

At a combined jurisdiction and disposition hearing on April 14, 2025, the department requested a continuance to assess placement of the children with father. The juvenile court granted the department's request and acknowledged that the parties had engaged in mediation to address the custody and visitation issues.

On June 2, 2025, the juvenile court held the continued jurisdiction and disposition hearing. As to jurisdiction, father requested the court find count (b)(1) true and as to disposition, that the matter be dismissed and the children placed with him. He submitted on visitation as agreed upon in mediation. The children's counsel agreed with father's requests. Mother's counsel objected to the allegations of count (b)(1) but declined to contest the issue at trial and stated she was also not in agreement as to disposition or the case's resolution "as it pertains to exit mediation and what the department is recommending as to the children's visitation with mother." Mother's counsel argued that A.M.C.'s wishes to have more visitation with mother were not being addressed and that supervision of her visits with the children was no longer appropriate or necessary. Mother's counsel requested unsupervised visits and overnight visits.

The juvenile court found the children came within the provisions of section 300, subdivision (b)(1). The court declared the children dependents of the court and found clear and convincing evidence of substantial danger to their physical health and emotional well-being if they were returned to mother's custody with no reasonable means to protect those interests absent removal. It found reasonable efforts had been made to prevent removal of the children and ordered that they remain detained from mother and that ICWA did not apply to the children. Per the mediation agreement, the court granted father sole physical custody of the children and removed physical custody of the children from mother pursuant to section 360, subdivision (d), and dismissed the dependency proceedings. The mediation agreement, entered as the court's visitation and custody order, or exit order, stated,

5.

"Supervised visitation [for mother] which shall not exceed [two] visits per week, for no more than [five] hours per visit. Specific times of the days for the visits supervised by a third party shall be mutually agreed upon between the parties and the supervising party at least [two] days in advance.

"In the event the parties cannot reach an agreement regarding the selection of a third-party supervisor, or on times and days for supervised visits to occur, the parties shall contact an agency that provides [s]upervised [v]isitation. In the event a supervising agency is used to facilitate the visits, the following provisions apply:

"The Court recommends the supervised visits be provided by an agency on the Court's list of approved providers.…

"If the parties are unable to agree upon a [third] [p]arty supervisor, [¶] … [t]he father shall select an agency on the Court's list of approved providers and shall: [¶] … [r]egister with the agency within 10 days AND [¶] … [p]rovide the other parent with the name and telephone number of the agency[.] [¶] … [¶]

"The supervising agency shall determine the times, days, and conditions for visitation which shall not exceed [two] visits per week, for no more than [two] hours per visit. In order to facilitate the scheduling of the supervised visits, [mother] shall work with the [department's] availability and identify four … possible visitation days/times. The [department] will contact [father] and [father] shall select from the four … options provided. The parents are expected to consider the children's academic schedule when selecting visitation times. The supervised visits shall commence no later than 45 days from the date of the signing of this [o]rder. Failure to cooperate in scheduling visits shall be considered by the court in future custody matters."

On June 5, 2025, mother timely filed a notice of appeal.

## DISCUSSION

Mother contends the juvenile court erred by failing to establish a minimum number of visits for her in the exit order, thus impermissibly delegating its authority regarding visitation to father. The People disagree. We agree with the People.

## A. *Law*

"In a dependency proceeding, the juvenile court has the power and responsibility to define a noncustodial parent's right to visit with his or her child after the minor has been adjudged a dependent child of the court and has been removed from parental custody." (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1373.)

Pursuant to section 362.4, subdivision (a), "[i]f the juvenile court terminates its jurisdiction over a minor … the juvenile court on its own motion, may issue … an order determining the custody of, or visitation with, the child." (§ 362.4, subd. (a); *In re Chantal S.* (1996) 13 Cal.4th 196, 202–203.) A custody and visitation order made pursuant to section 362.4, also known as an "exit order," is then "transferred to an existing family court file and remain[s] in effect until modified or terminated by the superior court." (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30–31; see § 362.4, subds. (b) & (c).)

"The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the court and may not be delegated to nonjudicial officials or private parties. [Citation.] This rule of nondelegation applies to exit orders issued when dependency jurisdiction is terminated. [Citations.] [¶] A visitation order may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner." (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123 (*T.H.*).) However, " 'the ultimate supervision and control over this discretion must remain with the court ….' [Citation.] Several appellate court have overturned visitation orders that delegate discretion to determine whether visitation will occur, as opposed to simply the management of the details." (*Ibid.*; see *In re S.H.* (2003) 111 Cal.App.4th 310, 317–320 (*S.H.*) [delegation to child]; *In re Julie M.* (1999) 69 Cal.App.4th 41, 48–51 [same]; see also *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138 [delegation to therapist]; *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476–1478 [same].)

We review the juvenile court's ruling on visitation for abuse of discretion. (*T.H.*, *supra*, 190 Cal.App.4 th at p. 1124.) A juvenile court abuses its discretion if its decision is "arbitrary, capricious or patently absurd." (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.) It is appellant's burden to establish an abuse of discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.) "The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 79; see *In re Sade C.* (1996) 13 Cal.4th 952, 994 ["An appealed-from judgment or order is presumed correct."].)

Discretion is abused where a visitation order gives a parent an effective veto power over the other parent's right to visitation. (*T.H.*, *supra*, 190 Cal.App.4th at p. 1124.) Where a court "fail[s] to mandate any minimum number of monitored visits per month or even to order that *some* visitation *must* occur each month, the court's abstract recognition of [the parent's] right to visitation is illusory, transforming the children's [or other parent's] ability to refuse 'a visit' into the practical ability to forestall any visits at all." (*S.H.*, *supra*, 111 Cal.App.4th at pp. 318–319 [abuse of discretion where juvenile court allowed mother to have monitored visitation but did not specify the duration or frequency of those visits and improperly delegated the visitation decision to the children, including the ability to refuse all visits].)

### B. Analysis

Here, the juvenile court did not improperly delegate its judicial authority concerning visitation in the exit order when it failed to establish a minimum number of visits for mother because the exit order included specific directions for the parties to utilize a supervising agency to set the days and times of visitation if the parents were unable to reach an agreement, and required visits to begin within 45 days of the entry of the order, thereby preventing father from having the right to veto visitation that would render mother's right to visitation illusory.

The exit order entered by the juvenile court granted mother supervised visitation with the children, not to exceed two visits per month, with each visit not to exceed five hours.  It stated the parents and supervisor were to agree upon the specific days and times of the visits and included directions for the parties if they could not reach an agreement regarding the days and times of the supervised visits, including a contingency plan stating that if the parties were unable to reach an agreement, they were required in such an event to utilize a supervising agency and that "[t]he supervising agency shall determine the times, days, and conditions for visitation which shall not exceed [two] visits per week, for no more than [two] hours per visit."  It also stated "supervised visits shall commence no later than 45 days from the date of the signing of this [o]rder.  Failure to cooperate in scheduling visits shall be considered by the court in future custody matters."

Mother contends the juvenile court's failure to include a minimum number of visits per month in the exit order renders her right to supervised visits illusory because, by not setting a minimum number of visits, the order essentially gives father a veto power.  She argues father could potentially not agree to any visitation and would still be in compliance with the order.

The department argues that the exit order's directions for the supervising agency to determine the times, days and conditions for visitation if the parties are not able to reach an agreement as to the days and times of the visits will prevent a situation where mother does not receive any visits.

Mother relies on *T.H.*, *supra*, 190 Cal.App.4th 1119 to support her argument.  In *T.H.*, a visitation order that provided that supervised visitation for the noncustodial parent would occur, but only upon the " 'agreement of the parents,' " was found to be an abuse of discretion because it was an improper delegation of the juvenile court's authority, "[a]s the custodial parent of the children … could conceivably agree to only one visit a year or less without violating the letter of the court's order." (*Id*. at p. 1123.)  The court

explained, "This is more than simply a delegation of the authority to set the 'time, place and manner' of the visitation—it effectively delegates to [the custodial parent] the power to determine whether visitation will occur at all." (*Ibid.*) The *T.H.* court noted the parents did not get along and the noncustodial father was entitled to supervised visits, but determined that the juvenile court's order made that right illusory when left solely to the "agreement" of a parent who was unlikely to agree, as it was framed in a way that gave the custodial parent an effective veto power over the noncustodial father's right to supervised visits. (*Ibid.*) The *T.H.* court reversed the order and remanded the matter for the juvenile court to exercise its discretion to formulate an order that established, at the least, the amount of visitation to which the noncustodial parent was entitled. (*Ibid.*)

*T.H.*, however, is distinguishable. While in *T.H.* the order contained no recourse for the noncustodial parent if the parties were unable to agree on visitation, the exit order here contained a specific contingency plan for a situation where father and mother were unable to agree on the days and times of supervised visits, setting out a detailed procedure to resolve such an incident by requiring the parties to utilize a supervising agency to choose the days and times for the visits, and requiring supervised visits to begin within 45 days of the entry of the exit order. The directions included in the exit order here prevent father from being able to stop mother from having visitation with the children by simply refusing to agree with her on days and times for visits, and accordingly, prevents her right to visitation from being illusory.

Mother also relies on *S.H.*, where the appellate court reversed a visitation order because it improperly delegated the visitation decision to the children. (*S.H.*, *supra*, 111 Cal.App.4th at pp. 318–319.) The visitation order in *S.H.* allowed the mother to have supervised visitation as part of her reunification plan but did not specify the duration or frequency of the visits. (*Id.* at pp. 316–317.) However, because the juvenile court noted the children were afraid of their mother, it ordered that the children would not be forced to visit if they refused. (*Ibid.*) The *S.H.* court found this was an improper delegation of

10.

the juvenile court's power to order visits, stating, "[B]y failing to mandate any minimum number of monitored visits per month or even to order that *some* visitation *must* occur each month, the court's abstract recognition of [the mother's] right to visitation is illusory, transforming the children's ability to refuse 'a visit' into the practical ability to forestall any visits at all." (*Id*. at p. 319.)

Here, however, unlike *S.H.*, although the exit order does not mandate a minimum number of visits, mother's right to visitation is not illusory. The directions included in the exit order here require the parties to engage a supervising agency to set days and times of visitation if the parties are unable to agree on visitation days and times themselves. Thus, the visitation set out in the exit order is not merely an "abstract recognition" of mother's right to visitation, as father will not be able to prevent visits by failing to agree with mother on days and times. Further, the exit order here requires visitation to begin within 45 days of the entry of the order and states that failure to follow the order will be taken into account in future custody proceedings, ensuring consequences for father if he fails to follow the directions of the exit order to utilize a supervising agency to set the days of times for visits should he and mother be unable to reach an agreement themselves.

Here, as the exit order contains directions to ensure visitation for mother in case the parties themselves cannot agree on days and times for visitation to occur and requires visitation start within 45 days of entry of the order, the order does not render mother's right to visitation illusory, even though it does not expressly mandate a minimum number of visits per month. Accordingly, the juvenile court did not abuse its discretion by failing to establish a minimum number of visits for mother in the order.

## DISPOSITION

The juvenile court's order is affirmed.